RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 9/14/10
BY DM

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

KATHRINA MARIE RHODES

versus

CIVIL ACTION NO. 09-1115
JUDGE TOM STAGG

CITY OF HOMER, ET AL.

## MEMORANDUM RULING

Before the court are two motions to dismiss filed by defendants the Town of Homer ("the Town"), Homer Memorial Hospital ("the Hospital"), Chief Russell Mills ("Chief Mills") and Dr. Clifton W. Salmon, Jr. ("Dr. Salmon") (hereinafter collectively referred to as "the defendants"). See Record Documents 10 and 19. Based on the following, the defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Considering the contents of both her original complaint and her first amended complaint[1], the plaintiff, Kathrina Marie Rhodes ("Rhodes"), who is proceeding pro

---

[1] In her amended complaint, Rhodes does not specifically refer to or adopt her original complaint. Thus, technically, the amended complaint supersedes the original and renders it of no legal effect. See Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985). However, "[i]t is well-established that pro se

se, alleges that she is a Native American who, with her African-American husband and ten children, moved to Homer, Louisiana, and then began to experience discrimination from members of the police department and other members of the community. Rhodes alleges that she was raped and beaten by a Caucasian male. An African-American male named Dennis Knowles ("Knowles") initially came to her rescue and fought off the Caucasian attacker/rapist, but he then allegedly turned on Rhodes and attacked and raped her himself.

Rhodes alleges that Knowles then took her to the Hospital, where she was treated poorly by the staff. Dr. Salmon is alleged to have refused to perform a rape kit examination, provide contraceptive medication or provide medication to prevent sexually transmitted diseases ("STDs") (which Rhodes asserts that she did contract as a result of the rapes). Rhodes also asserts that both Dr. Salmon and police officers stationed at the hospital refused her requests that other evidence related to the alleged rape be collected, including pictures of lacerations and contusions on her body. Furthermore, she states that because the Homer police did not give her the benefit of a confidential and private setting, she was unable to safely communicate Knowles

---

complaints are held to less stringent standards than formal pleadings drafted by lawyers." See Bustos v. Martini Club Inc., 599 F.3d 458, 461-62 (2010) (internal quotations and citation omitted). Thus, out of an abundance of caution, this court will address both the original and the amended complaint.

alleged involvement in the rape to any individual at the hospital, and that the police eventually told Knowles to take Rhodes home.

Rhodes alleges that after the police directed Knowles to take Rhodes home from the hospital, Knowles kidnapped her and one of her daughters and held them hostage by means of threats of harm to Rhodes's grandchild. Rhodes alleges that Knowles raped and beat her nightly for nearly five months. She alleges that she was eventually forced to marry Knowles, and that he and his family members spent her money and left her bankrupt. Rhodes makes a plethora of other allegations but this summary suffices for current purposes.

Rhodes claims that she is entitled to relief for her alleged injuries under several federal and state sources of law. First, Rhodes has broadly asserted that her pleadings allege violations of her rights and privileges and immunities under the Constitution of the United States and the statutes of the State of Louisiana "for failure to protect, serve and discrimination." Record Document 1 at 1. As to federal law, she has specifically alleged violations of the Second, Eighth and Fourteenth Amendments of the United States Constitution and argues that under 42 U.S.C. §§ 1983 and 1988, she is due monetary damages and declaratory relief for these alleged infractions. See Record Documents 1 and 15. As to state law claims, Rhodes specifically asserts that she is due relief for injuries caused by the defendants under Louisiana Civil Code

articles 2315 through 2324 and Article I, Section 11 of the Louisiana Constitution.[2]

The defendants have filed two motions to dismiss, one in response to the original complaint and one in response to the first amended complaint filed by Rhodes. The defendants contend that the allegations in Rhodes's complaints do not rise to the level of a constitutional violation and that the complaints fail to otherwise allege facts sufficient for any other claim arising out of federal law. Without a valid federal claim, the defendants argue that this court is without jurisdiction to consider Rhodes's state law claims, and thus the entire case should be dismissed. See Record Documents 10 and 19.

## II. LAW AND ANALYSIS

### A.  Federal Rule of Civil Procedure 12(b)(6) Standards.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need

---

[2]Rhodes actually alleges that she is entitled to relief under "Section 11 of the Constitution of Louisiana." See Record Document 15 at 2. However, the court agrees with the defendants' assessment that Rhodes obviously intended to reference *Article I*, Section 11 of the Louisiana Constitution. See Record Document 19 at 2 n.1. Article I, Section 11 of the Louisiana Constitution addresses the right to keep and bear arms. In her initial reference to "Section 11," Rhodes jointly alleges a violation of that provision and "Amendment II of the Constitution of the United States of America," which addresses the right to keep and bear arms. See Record Document 15 at 2; U.S. Const. amend. II. Furthermore, in her complaint, the only additional mention of "section 11 of the Louisiana Constitution" is in a paragraph discussing issues related to the confiscation of guns. See Record Document 15 at 5.

detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). The court generally must not consider any information outside the pleadings. See Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010).

It is well-established that pro se complainants like Rhodes are held to less stringent standards than formal pleadings drafted by lawyers. See Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. See id. (citation and quotations omitted). "[E]ven when a plaintiff is proceeding pro se, the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain

allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Govea v. ATF, 207 F. App'x 369, 372 (5th Cir. 2006) (quoting Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995)). This court need not "conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." Id. (quotations and citation omitted).

**B. Analysis Of Claims.**

    **1. Federal Claims Against Corporate And Municipal Entities.**

As noted above, Rhodes has asserted that under 42 U.S.C. § 1983, she is entitled to damages from several corporate and municipal entities, specifically the Town, the Police Department and the Hospital, for violations of her constitutional rights. In order to allege the liability of a local governmental entity for a violation of constitutional rights under section 1983, the plaintiff must allege facts sufficient to establish three elements: (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom. See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002). In her original complaint, Rhodes failed to allege that an official policy of the Town or the Police Department was a moving force in the violation of her constitutional rights. See Record Document 1. Thus, the defendants raised the policy issue in their first motion to dismiss. See Record Document 10 at

12-13. In her amended complaint, the plaintiff still failed to allege that an official policy of the Town of Homer or the Police Department was a moving force in the violation of her constitutional rights. Accordingly, the defendants incorporated their arguments as to the first complaint into their motion to dismiss the amended complaint, again raising the policy issue. See Record Document 19 at 8. Thereafter, the plaintiff attempted to file a second amended complaint, which was rejected by the magistrate judge for reasons irrelevant to the present analysis.[3] See Record Document 27. The court notes, however, that even in this third proposed complaint, Rhodes did not allege that any official policy or custom of the Police Department or the Town was a moving force in the deprivation of any constitutional rights. Thus Rhodes has failed to allege facts giving rise to a valid claim under 42 U.S.C. § 1983 for constitutional violations committed by the Police Department or the Town. The defendants are entitled to the dismissal of these claims.

---

[3]In his ruling, the magistrate judge noted that under existing legal authority, the statute cited by Rhodes in her proposed second amended complaint does not govern hospitals, and that there is no other identifiable basis for attempting to apply the statute in this case. See Record Document 27 at 2. Furthermore, the magistrate noted that the statute's remedy for a private suit is prospective injunctive relief, not damages, and that there is no basis stated in the complaint to believe that Rhodes is likely to suffer similar discrimination in the future that the court would need to enjoin. See id. Thus, the magistrate judge denied the request to amend, since this would only add a meritless claim to the case.

As to the Hospital, Rhodes has asserted it is merely a "for profit corporation." See Record Documents1 at 3 and 15 at 3. Rhodes has not alleged that the Hospital is affiliated in any way with any government or conspiring with any government. Accepting this as true, then no claim under section 1983 may lie against the Hospital. To state a claim under Section 1983, Rhodes must allege that the offending entity acted under color of law, i.e., that the offending entity is a state actor or conspiring with a state actor. See 42 U.S.C. § 1983; Hines v. Helms, 78 F. App'x 360, 361 (5th Cir. 2003) ("Any action pursuant to [section] 1983 requires the plaintiff to show a federal-rights deprivation by a state actor."); Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994). Accordingly, all constitutional claims against the Hospital asserted under 42 U.S.C. § 1983 will be dismissed.

The court acknowledges that in their first motion to dismiss, the defendants asserted that the Hospital is actually a division of the Town that has been granted authority and capacity by the Town to act as a separate juridical entity for contracting and litigation purposes. See Record Document 10 at 3 n.2. However, since this information is not included in Rhodes' pleadings, this court may not rely on this information in addressing the pending motions to dismiss. Even if Rhodes had signaled her agreement with this information by including it in her amended complaint, she would still, without more, fail to state a claim against the Hospital

under section 1983 because she has not alleged that any official policy of the Hospital was a moving force in depriving her of federal statutory or constitutional rights. From the moment Rhodes received the defendants' first motion to dismiss, she was aware of the defendants' position that the Hospital is an agent of the Town, and that a municipal entity may only be liable under section 1983 if its official policies were a moving force in the deprivation of plaintiff's constitutional rights. Rhodes has submitted two amendments to her complaints since that time, one of which was accepted by the court. Neither amended complaint asserted that the hospital was a government entity or that an official policy of the Hospital was a moving force behind the deprivation of Rhodes's constitutional rights.

The court has considered what, if any remaining claims may exist with regard to the three named defendants discussed above. Construing the pleadings liberally, the court has considered the possibility that Rhodes may have attempted to allege a claim under 42 U.S.C. § 1985(3) against the Town and the Police Department. Section 1985(3) prohibits conspiracies between persons to deprive an individual or class of people of their civil rights. In her pleadings, Rhodes alleges that several "City Officials" conspired to try to run the plaintiff out of town by not cooperating with her request for protection from the abuses of a Caucasian male. Rhodes then makes a conclusory statement, alleging that these actions were taken because of her

race.

Even assuming all of the plaintiff's pleaded facts are true, she has failed to allege a cause of action under section 1985(3). "It is a long-standing rule in [the Fifth Circuit] that a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994). "A governmental unit cannot conspire with itself." Waldon v. City of Linden, 2-09-238, 2009 WL 5175206, at *3 (E.D. Tex. Dec. 18, 2009). Yet, that is what Rhodes alleges, that agents of the Town conspired with each other to her detriment. Accordingly, Rhodes has failed to allege facts sufficient for a claim under 42 U.S.C. § 1985(3).

The court further finds that the facts pleaded fail to give rise to any other viable actions based on federal statutory or constitutional rights against the three defendants discussed above. Therefore, all federal claims against these defendants will be dismissed.

### 2. Federal Claims Against Individuals.

Rhodes has named two individuals as defendants, Chief Mills and Dr. Salmon. Some of the court's previous findings apply to the claims alleged against these defendants. Similar to her treatment of the Hospital, Rhodes has not alleged that Dr.

10

Salmon is an employee of a government or that he acted in a conspiracy with the government to deprive her of civil rights. Thus, as explained above in the section addressing claims against the Hospital, Dr. Salmon is entitled to have the federal constitutional claims against him dismissed. Additionally, this court's previous discussion regarding the potential conspiracy claim presented in the pleadings governs any potential claim of this nature levied against Chief Mills. Finally, to the extent that either of these two men can/could be sued in their official capacity[4], these official capacity claims are equivalent to claims asserted directly against the Police Department, the Town and the Hospital respectively. See Ganther v. Ingle, 75 F.3d 207, 209 (5th Cir. 1996); Desormeaux v. Sherriff's Office Cameron Parish, 46 F. App'x 731 (2002). Thus, this court's previous findings regarding the federal statutory and constitutional claims asserted against the Police Department, the Town and the Hospital also address any official capacity claims against these two individual defendants.

The court now turns to the individual capacity claims asserted against these two

---

[4] It is clear that Chief Mills may be sued in his official capacity. However, on the face of the pleadings, Dr. Salmon is not a government agent, and thus has no official capacity in which he may be sued. However, while the court may not rely on this information while adjudicating a motion to dismiss, the court notes that the defendants aver that Homer Memorial Hospital is a municipal entity. If this is true, then Dr. Salmon could be sued in his capacity as an official of that municipal entity.

11

defendants. When a public official is sued in his individual capacity for actions taken in the course of official duties, the public official may attempt to claim qualified immunity. See Harvey v. Blake, 913 F.2d 226, 228 (5th Cir. 1990); Gaines v. Davis, 928 F.2d 705, 706-07 (5th Cir. 1991). In their motion to dismiss, both Chief Mills and Dr. Salmon have elected to pursue this option. See Record Document 10 at 2 and 17. As stated above, on the face of the pleadings, Dr. Salmon is entitled to dismissal of all of the federal constitutional claims levied against him, and thus he need not assert qualified immunity. Nevertheless, this court will tender a brief comment as to Dr. Salmon's claim to immunity after addressing the immunity of Chief Mills.

The standards regarding the analysis of a qualified immunity claim in a motion to dismiss were discussed in Wicks v. Mississippi State Employment Services, 41 F.3d 991, 995 (5th Cir. 1995).

> To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [the defendant] violated clearly established statutory or constitutional rights. [This heightened pleading requirement] demands more than bald allegations and conclusionary statements. [The complainant] must allege facts specifically focusing on the conduct of [the defendant] which caused [the plaintiff's] injury.
> If [the plaintiff's] complaint falls short of this standard, the district court should rule on the motion to dismiss before any discovery is allowed.

Id. "The complaint cannot be cast in broad, indefinite and conclusory terms." Brown v. Tex. A & M Univ., 804 F.2d 327, 333 (5th Cir. 1986) (quotations and citation

omitted). Instead, "[t]he plaintiff must plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negative the defense of qualified immunity." Id.

With these standards in mind, the court has examined Rhodes's complaints to see if her allegations negate Chief Mills's defense of qualified immunity. The court finds Rhodes's complaints insufficient in this regard. The complaints fail to show the deprivation of a clearly established constitutional right. Rhodes first alleges that Chief Mills arrested her in response to some misinformation he received from the vice-principal of her daughter's middle school. Rhodes does not allege that Chief Mills was negligent in this action or that he acted inappropriately in any way during the arrest. Without more, this allegation does not give rise to a constitutional claim. See Davenport v. Rodriguez, 147 F.Supp. 2d 630, 637 (S.D. Tex. 2001) ("Merely being handcuffed and taken to the police station, however, is not excessive force, but standard police practice. There is no right against being handcuffed."). In her amended complaint, the plaintiff then randomly alleges that Chief Mills "pulled a weapon on Plaintiff on one occasion and took at shot at Plaintiff at which time Plaintiff defended herself." See Record Document 15 at 5. No contextual facts are provided regarding this allegation. Without more, this allegation does not give rise to a constitutional claim. At best, this might be construed as an attempt to assert an

excessive force claim, but Rhodes has failed to allege at least some injury, psychological or physical, a requisite for such a claim. See Flores v. City of Palacios, 381 F.3d 391, 398 (5th Cir. 2004) ("A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.'"); Jackson v. Culbertson, 984 F.3d 699, 700 (5th Cir. 1993). Rhodes alleges that Chief Mills verbally threatened and harassed her and her son. However, "the Fifth Circuit has held that mere allegations of yelling, shouting, verbal abuse or threats by a police officer do not amount to a constitutional violation." Collier v. City of Bossier City, No. 05-0795, 2007 WL 734737, at *7 (W.D. La. Mar. 6, 2007) (Stagg, J.) (citing several Fifth Circuit opinions); see also David v. Assumption Parish Police Jury, No. Civ.A.02-765, 2003 WL 57039, at *3 (E.D. La. Jan. 6, 2003) (quotations omitted) (citing several opinions by the Fifth Circuit and other federal courts of appeal) ("[i]t is well established that claims of mere threatening language or gestures of a [state official] do not, even if true, amount to constitutional violations."). Rhodes also alleges that Chief Mills failed to assist her in investigating her alleged rape, and that Chief Mills failed to take action to protect her from the harassment of a nameless Caucasian male. Even if these allegations are true, they do not give rise to a constitutional claim. "In general, local governments are under no duty to provide protective services." Piotrowski v. City of Houston, 237 F.3d 567, 583 (5th Cir. 2001).

> [T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual . . . [Thus,] a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

Id. (quoting DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 196-97, 109 S.Ct. 998, 1003-04 (1989)). In her complaints, Rhodes occasionally states that she believes that Chief Mills took some of the aforementioned actions because of her race. These conclusory statements do not alter the outcome of the present analysis.

Finally, Rhodes also alleges that Chief Mills told police officers at the Hospital to send Rhodes home with Knowles after she was treated for injuries incurred during an alleged assault/rape, and that this decision allowed Knowles to abduct and abuse Rhodes continuously for several months thereafter. Again, as stated in the complaints, Knowles is an individual who allegedly first rescued Rhodes from anonymous attackers/rapists, and then brutally turned on Rhodes and attacked and raped her himself. Rhodes claims that after Knowles attacked and raped her, she then appealed to Knowles's sympathy and convinced him to take her to the emergency room for medical treatment. The court notes that Rhodes claims that since she was always in Knowles's presence at the hospital, she was unable to report his involvement in her

attack to the police. On the face of Rhodes's pleadings, at the time he gave the instruction for Knowles to drive Rhodes home, Chief Mills was completely unaware of Knowles's involvement in the attack leading to Rhodes's emergency room visit. However, Rhodes asserts that when Chief Mills gave this instruction, he did have knowledge that Knowles had two prior forcible rape charges pending, as Chief Mills was allegedly the officer who arrested Knowles on these charges. Accepting Rhodes's allegations as true, the court finds that they do not allege a violation of a clear constitutional right on the part of Chief Mills. Thus, in accordance with the analysis above, the court finds that Chief Mills is entitled to the dismissal of all federal claims asserted against him in his individual capacity as Rhodes has failed to allege facts sufficient to defeat his qualified immunity.

If constitutional claims had been properly asserted against Dr. Salmon in this case, the result under the pending motions to dismiss would be similar to the case of Chief Mills. Even given such circumstances, Rhodes has failed to allege that Dr. Salmon violated any clear constitutional right. Rhodes has asserted that she came under Dr. Salmon's care when she was transported to the Hospital emergency room after two alleged rapes. She claims Dr. Salmon refused to administer a rape kit or take pictures of her physical injuries for evidentiary purposes. She also contends Dr. Salmon refused to provide her with the "day after pill" and "some medication to

prevent any STDs." Record Document 15 at 8. Thereafter, Rhodes alleges she contracted a STD from the alleged sexual assault. In sum she states, Dr. Salmon's "lack of professionalism and outright refusal to do the minimum required in this case amounted to Intentional Infliction of Emotional Distress. This is in violation of the State and Federal Statutes cited above . . . ." Id.

"The Constitution does not provide an independent right to be free from emotional distress." Flores, 381 F.3d at 401 n.8. Furthermore, plaintiff's claims regarding her allegedly deficient emergency room medical care do not state a violation of any other clear constitutional right. Accordingly, in this motion to dismiss, if this court could properly consider allegations asserted against Dr. Salmon in his official capacity, the court would be compelled to dismiss these allegations since they are not sufficient to overcome Dr. Salmon's qualified immunity.

For the reasons set forth above, all federal claims asserted against the two named individual defendants in their official and individual capacities will be dismissed. Rhodes has failed to allege facts sufficient to give rise to any viable federal claim against these defendants.[5]

---

[5] As explained in the sections above, Rhodes has failed to allege facts which are sufficient to establish any federal claims against any of the named defendants in this case. Rhodes has been on notice that her complaints were deficient in several respects since the defendants filed their first motion to dismiss. She has since filed two amended complaints, one of which was accepted by the court, and

17

### 3. State Law Claims.

The court now turns to Rhodes's state law claims. The defendants argue that without a viable federal claim, this court lacks jurisdiction to hear any claims arising out of state law against any of the defendants. This is not correct.

> A district court may entertain state law claims pursuant to its "supplemental jurisdiction," provided that the claims arise from the case or controversy over which the district court *had* original jurisdiction. When all federal claims are dismissed - *i.e.*, those over which the district court had original jurisdiction-the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims.

Burns-Toole v. Byrne, 11 F.3d 1270, 1276 (5th Cir. 1994) (emphasis added).

In the present case, Rhodes alleged several state law claims which arose from the same case or controversy that allegedly gave rise to her federal claims. Thus, this court has supplemental jurisdiction over these state claims. Once the court dismisses the alleged federal claims, the court will not immediately be divested of jurisdiction over these state law claims. Instead, as the text quoted above explains, under 28 U.S.C. § 1367(c)(3), this court is granted great discretion to decide how to best address these claims. The court "may decline to exercise supplemental jurisdiction

---

one which was rejected for reasons which are irrelevant to the present ruling. In neither amended complaint did Rhodes submit information which would cure the deficiencies in her complaints. Accordingly, for all the reasons stated herein, all federal claims against the named defendants will be dismissed with prejudice.

over" the state law claims, or it may proceed to adjudicate these claims. 28 U.S.C. § 1367(c)(3). However, the Fifth Circuit has stated that "it is our 'general rule' that courts should decline supplemental jurisdiction when all federal claims are dismissed or otherwise eliminated from a case." Certain Underwriters at Lloyd's, London v. Warrantech Corp., 461 F.3d 568, 578 (5th Cir. 2006). Accordingly, this court will decline to exercise supplemental jurisdiction over Rhodes's state law claims, and will dismiss these claims without prejudice. Under 28 U.S.C. § 1367(d), Rhodes will have at least thirty days from the date of dismissal to file any state claims which fell under the supplemental jurisdiction of this court and which were not prescribed prior to their submission to this court in an appropriate state tribunal before state periods of limitation resume.

### III. CONCLUSION

Based on the foregoing, the defendants' motions to dismiss (Record Documents 10 and 19) are **GRANTED** in part and **DENIED** in part. The defendants' motions are **GRANTED** to the extent that all of the alleged federal claims asserted against the defendants are hereby dismissed with prejudice. The defendants' motions are **DENIED** to the extent that they request dismissal of Rhodes's state law claims for lack of jurisdiction. Instead, this court will exercise its discretion under 28 U.S.C. § 1367(c), in accordance with the general rule of this circuit, and decline to exercise

supplemental jurisdiction over Rhodes's state law claims and will dismiss these claims without prejudice.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 14th day of September, 2010.

JUDGE TOM STAGG